CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID EATON, | ) | CASE NO. 7:13CV00367 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| COMMONWEALTH OF VIRGINIA, | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

David Eaton, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, asserting that he was wrongfully convicted in June 2010 on charges of sexually molesting his girlfriend's three children in 1977 and 1978. The respondent has moved to dismiss, and Eaton has responded, making the matter ripe for disposition. The court concludes that the motion to dismiss must be granted, because Eaton's claims are procedurally barred from federal habeas corpus review and, in any event, it is clear from the record that he has not stated facts entitling him to relief under § 2254(d).

**I**

A grand jury in Augusta County, Virginia, returned an indictment on January 26, 2009, charging David Eaton with two counts of carnal knowledge of a child less than thirteen years of age by or with the mouth and two counts of fondling the genital parts of a child less than fourteen years of age, in violation of Virginia Code §§ 18.2-361 and 18.2-370. All offenses allegedly occurred in 1977 and 1978. Eaton waived his right to a jury and, on February 24, 2010, the trial court heard the following evidence.

Sherry S. testified that Eaton sexually abused her and her two brothers, Chris P. and Cordell Clinton ("Clint") P., "at least once or twice a week, every year from the time [Sherry]

was five until [she] was 13." Trial Transcript ("Tr.") 22. She described Eaton's abuse as "anal sodomy, fondling him," and "st[i]cking his penis in [her] mouth." Tr. 22. After these acts, Sherry said, Eaton would threaten to kill her, her mother, or her brothers.

Sherry stated that, at the time of the charged offenses, Eaton lived with the children's mother, Jean Cyhanick, in Mint Springs, Virginia. Sherry testified that in the summer of 1977, when she was 11 years old, Eaton ordered her into her brother's bedroom, told her to remove her clothes and lay on the bed, and "rammed his fingers into [her] vagina." Tr. 23. This act "was so painful" that Sherry "took off running down the stairs," out of the house, and into the street, naked and "bloody," with Eaton chasing her. Tr. 23-24. She tried to flag down a passing car, but it did not stop. Eaton caught her, walked her back to the house, and made her bathe and dress. He told her that he "did nothing wrong [and] everything was gonna be all right." Tr. 24. He promised to get Sherry a horse, but then said, "You better not tell your Mom," who was not at home, "or I'll kill her, and I'll kill your brothers." Tr. 24.

Sherry also testified about an incident in the summer of 1978, when she was 12. Eaton told Sherry and Chris to come with him to the barn, where he made Sherry stand in front of him and Chris behind him. Eaton told Sherry to put his penis in her mouth. At the same time, Eaton had Chris fondle his testicles with one hand and put a finger from his other hand up Eaton's anus. During this incident, Cyhanick ran into the barn and told the children to stop and go to their rooms. Sherry heard Cyhanick and Eaton "fighting and arguing," and Eaton had a gun, but Sherry did not know what he did with it before he left the house. Tr. 27. After this incident, Eaton gave the children money. He gave Sherry a calculator for school, because her mother refused to get a horse.

Sherry testified that, sometime after she turned 13, her cousin, Audie Dove, asked her why she was so afraid of Eaton. Sherry told Audie about Eaton's sexual acts against her and his threats. Audie Dove testified that, in 1979, when he was 15 years old, Sherry told him that "David give her gifts and various different things for sexual favors." Tr. 48. Audie kept her secret.

On cross examination, Sherry testified that she first reported Eaton's sexual abuse to authorities as an adult in October of 2007. When she was 9 years old, Sherry told her mother about Eaton's earlier incidents of sexual abuse, but did not tell her mother about the incident when she ran out of the house, naked, or later incidents, because Eaton "threatened [her] worse." Tr. 32. In 1979, Eaton married Cyhanick, and they had children together, David Eaton, in 1980, and Misty Loveless, in 1982. Eaton worked full time as an auto mechanic, while Cyhanick cared for the children. The couple also hosted a number of foster children, some of whom made allegations of abuse against Eaton. Child Protective Services and, later, the police, investigated, but brought no criminal charges against Eaton. When police asked Sherry if Eaton had abused her, she denied it, because Eaton had threatened her. Sherry admitted that Eaton attended her wedding in 1984, that he sometimes did mechanical repairs to her car, and that she helped her mother take care of Misty and David "to protect them from" Eaton. Tr. 44. Sherry testified that she did not know for a long time that she could report Eaton's abuse after so many years had passed, and she and her brothers were embarrassed and scared about what might happen if they reported Eaton's abuse to the authorities.

Chris testified that he was 11 years old in the summer of 1978 when Eaton led him and and Sherry to the barn. Chris testified that Eaton "tried to make me fondle him and have anal sex with him, while [Sherry] was giving him oral sex." Tr. 51. Chris said, "Mom walked in and

3

caught him doing it" and told the children to run to the house. Tr. 51. Chris watched from his bedroom window and saw his mother take a gun away from Eaton, who then left and was away for a couple days.

Chris also testified that one summer day in 1977, he and Clint were playing pool downstairs, when Eaton took Sherry upstairs. A short time later, Chris heard "hollering and screaming [and] Sherry takes off running down the driveway, half-naked, with [Eaton] chasing after her." Tr. 52. Chris testified that he had also seen Eaton sexually molest one of the foster girls living in the house with the family. Chris said he never reported to anyone that Eaton was abusing him because he was "scared of" Eaton. Tr. 55-57. After he turned 14, Eaton did not abuse him anymore, and Chris occasionally went fishing and boating or to a club with Eaton, although never alone, and received Eaton's advice about car repairs.

Jean Cyhanick testified that one summer day in 1978, she asked Clint where Chris and Sherry were, and he pointed toward the barn. Cyhanick said she walked into the barn and found Sherry, Chris, and Eaton. Cyhanick saw that Eaton's "pants were open, and his penis was out, and [Chris] was standing beside of him with his hand on – on him, and Sherry was standing off to the other side." Tr. 61. Cyhanick heard Eaton say that it was Sherry's turn. Then all three of them looked at Cyhanick, who told the children to get to the house, and she followed. At the house, Cyhanick said, she picked up a shotgun, but Eaton took it away from her. Cyhanick said she was afraid to call the police, because Eaton had previously threatened to kill her children if she "said or did anything." Tr. 62. Eaton had told her "how he had killed other people and gotten by with it [and] how he could kill [her] children and get by with it," even from jail. Tr. 85. Cyhanick testified that the children told her about Eaton's abuse in 1974 or 1975, but she did not tell the authorities, and in 1979, she married Eaton. Cyhanick testified that Misty and David

4

never reported to her that Eaton had abused them. While Eaton was in prison in the mid-1990s on unrelated federal offenses, the couple divorced.

Clint testified that from the time Clint was four or five years old, Eaton made Clint "perform oral sex on him" and "molested" him, Chris, and Sherry. Tr. 88. Clint testified that, in the summer of 1978, Eaton took him for a ride in the "work van," pulled down a back road, and started fondling [Clint]." Tr. 89. Eaton put "his penis in [Clint's] mouth," Tr. 98, and tried to have Clint perform anal sex, but the child "couldn't get an erection." Tr. 89. Eaton told Clint, as he often did after incidents of abuse, that if he ever told anyone, Eaton would kill him and hide the body. He told Clint nobody would believe him because he was a child.

Clint testified about a summer day in 1978, when Eaton asked him to count the teeth on a motorcycle sprocket, while Eaton took Sherry and Chris to the barn. Cyhanick asked Clint where the others were, he directed her to the barn, and she went off in that direction. A short time later, Clint saw Cyhanick, Sherry, and Chris running toward the house, with Eaton chasing them, asking Cyhanick to stop so he could explain. Cyhanick sent the children inside, where Clint watched from the window to see Eaton with "his .357 magnum," arguing with Cyhanick. Tr. 91-92. Ultimately, Clint saw Eaton empty the gun of bullets and drive away.

Clint also testified about one summer day when his mother had left the house to go shopping, and he and Chris were playing pool and saw Eaton take Sherry upstairs. Clint testified, "[Not] long after that, Sherry come running down, naked from the waist down, bleeding, and she ran out the front door" to the preacher's house, but Eaton followed and brought her home.

Eaton testified at trial. He denied that he ever sexually abused Sherry, Chris, or Clint. Eaton described the barn incident as a joke. He said that he and the three kids were in the barn to

find some string, when Eaton slipped behind a partition to urinate. Chris came over to him and asked what Eaton would do if he "was the richest man in the world," and Eaton answered, "[i]f I was the richest man in the world, when I got done peeing, I'd have somebody come and put it away for me." Tr. 112. Eaton testified that he turned to Sherry, who was on the other side of the barn, and said, "Your turn," just as Cyhanick walked into the barn. Tr. 112. Eaton stated that he told Cyhanick his story and left her to talk to the children about the incident, while he went to his shop. After a while, she called Eaton and said, "Okay. We've talked it over. Come on back." Tr. 113.

Eaton testified that Cyhanick wrote a letter to the court, seeking leniency in Eaton's federal prosecution, and Cyhanick admitted she had written a letter. Eaton stated that in 1990 and 1992, Sherry asked him for several thousand dollars. Sherry denied that she ever asked Eaton for money for herself. Eaton testified that when Sherry got married, she asked him to "give her away," and he did. Tr. 116. Sherry testified that her brother, Chris, gave her away at her wedding. Eaton testified that Sherry visited him in prison several times, which she denied, that she invited him and Cyhanick to an office party, and that he and Sherry and Misty went fishing and swimming in West Virginia together. Eaton also testified that he took Chris and Clint fishing, camping, hunting, and boating, and helped Clint get a job.

On redirect, Eaton testified that in 1977, he and Cyhanick and the children lived in New Hope, Virginia, and moved to Mint Springs in April 1978, although he admitted "I can't establish that." Tr. 128. Cyhanick testified that she did not remember dates well, but affirmed that she and Eaton lived in Mint Springs in the summer of 1977.

Eaton's two children, Misty and David, testified at trial. David stated that Eaton had never sexually abused him. When asked if Eaton had ever sexually abused her, Misty stated, "Not that I remember. I don't remember much of my childhood." Tr. 136.

After the Commonwealth rested, and again at the close of the evidence, Eaton's attorney moved to strike. He argued that the witnesses' testimony was "inherently unreliable and inherently contrary to human experience," based on the passage of time and inconsistencies in their accounts of the same events. Counsel argued that the victims and Cyhanick gave no reasonable explanation for their 33-year delay in reporting the abuse, even when Eaton was in jail for long periods, and asserted that their continued relationships with Eaton into adulthood contradicted their alleged fear of him.

The trial court found that the victims' testimony corroborated each other's account of the abuse, with the exception of the incident in the van. The Court found that, while he could not understand Cyhanick's continued relationship and marriage to a man who had sexually abused her children, the situation was not inherently contrary to human experience, as the Court knew from similar cases. Therefore, the Court denied the motion to strike. While disturbed by the victims' choice to report Eaton's abuse three decades after the events, the Court did not find the delay sufficient to destroy their credibility and found the victims' testimony to be more credible than Eaton's account. For these reasons, the Court found Eaton guilty on all four charges. On June 24, 3010, the Court sentenced Eaton to a total of 25 years in prison, 9 years above the high point of the custody range calculated under the state's advisory sentencing guidelines.

Eaton appealed, arguing that the Commonwealth witnesses' testimony was inherently incredible and that the evidence was insufficient to prove the force element of the § 18.2-361 offense as that statute was written and interpreted in 1977 and 1978. The Court of Appeals of

Virginia refused the appeal (Record No. 1276-10-3), and the Supreme Court of Virginia refused

Eaton's second-tier petition on May 10, 2011 (Record No. 110084).

Eaton then filed a petition for a writ of habeas corpus in the Augusta County Circuit

Court, alleging court error and ineffective assistance of counsel (Case No. CL11001230-00).

The Court dismissed the petition on October 25, 2012, consistent with its letter opinion issued

September 24, 2012. Eaton appealed, but the Supreme Court of Virginia dismissed his habeas

appeal on the ground that the assignment of error was deficient, in that it failed to address the

Circuit Court's ruling below, as required under Supreme Court Rule 5:17(c)(1)(iii). (Record No.

122087.)

Eaton filed his timely § 2254 petition, alleging that trial counsel was ineffective in failing

to present documentary evidence and arguments to impeach the Commonwealth's witnesses.

Because Eaton's claims overlap and repeat each other, the court will not list them here. The

respondent filed a motion to dismiss, to which Eaton has responded,[1] making the matter ripe for

disposition.

## II

The respondent argues that the Supreme Court of Virginia's dismissal of Eaton's habeas

appeal on procedural grounds bars this court from addressing his ineffective assistance claims on

the merits. See Hedrick v. True, 443 F.3d 342, 363 (4th Cir. 2006) (concluding failure to comply

with Va. Sup. Ct. R. 5:17(c) constitutes a procedural default); Justus v. Murray, 897 F.2d 709,

712-714 (4th Cir. 1990) (finding that claim raised in circuit court habeas proceeding, but not

---

[1] The respondent's motion to dismiss construes Eaton's § 2254 petition as alleging claims of insufficient evidence and false testimony, in addition to claims of ineffective assistance. Eaton states, however: "Let it be clear that **the only claims raised are that counsel for the petition was ineffective**." (ECF No. 14, p. 1) (emphasis in original). Therefore, the court's memorandum opinion addresses his claims only in the context of alleged ineffective assistance of counsel. To the extent that Eaton also brings claims of court error, however, such claims must be dismissed for the reasons stated in the respondent's brief.

properly appealed to the Supreme Court of Virginia, is deemed defaulted). The court agrees that Eaton's failure to state proper assignments of error in his habeas appeal as required under the Supreme Court's rules constitutes a procedural default that bars federal review of his claims on the merits, absent a showing of cause and prejudice or actual innocence. Breard v. Pruett, 134 F.3d 615, 619-20 (4th Cir. 1998).

Eaton contends that he has shown cause for his procedural default of his ineffective assistance claims in his state habeas appeal, because he did not have counsel during that proceeding. See Martinez v. Ryan, 132 S. Ct. 1309 (2012). The Martinez Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 1320. Eaton moves for appointment of counsel under Martinez.

Eaton cannot invoke the Martinez exception to default, however. In his initial habeas proceeding, Eaton raised claims of ineffective assistance by trial counsel, and the Circuit Court addressed them on the merits. Id. at 1318 (limiting exception to situation where ineffective assistance claim was *not* raised during initial review stage). Eaton defaulted his ineffective assistance claims only during the state habeas appeal. Lack of counsel at the appellate level of state habeas proceedings does not provide cause to excuse petitioner's procedural default under state appellate court rules.[2] Id. at 1320. For the same reasons, Martinez does not afford any ground on which Eaton is entitled to appointment of counsel for this federal habeas proceeding, and the court finds no such ground. See Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B)

---

[2] Moreover, because the court finds herein that Eaton's claims of ineffective assistance by trial counsel are without merit, he fails to demonstrate that any of them is "substantial" as required under Martinez for relief from default. 132 S. Ct. at 1318.

(authorizing appointment of counsel in closed criminal case only upon finding that the interests of justice so require.) Therefore, the court will deny Eaton's motion for appointment of counsel.

Eaton also asserts his actual innocence of the offenses, perhaps as a means to circumvent his procedural defaults. In this context, a petitioner must show "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial. Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)). Eaton asserts, broadly, that his attorney had knowledge of and failed to present evidence to prove the trial witnesses were lying. The evidence Eaton offers, which he also offers in support of his claims themselves, is impeachment material, at best. Eaton fails to demonstrate any evidence counsel knew and failed to offer that conclusively established the falsity or unreliability of the witnesses' testimony about the acts for which Eaton was convicted. Thus, the court cannot find that this evidence makes it "more likely than not that no reasonable juror would have convicted" Eaton of the offenses. As such, the court concludes that Eaton has not demonstrated actual innocence under Schlup so as to circumvent his procedural defaults.

### III

A federal court may grant habeas relief only if the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded

jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131

S. Ct. 770, 786 (2011) (omitting internal quotations).

To state a constitutional claim for ineffective assistance, petitioner must satisfy a two-

prong test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient

performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 686-87 (1984).

Petitioner must overcome "a strong presumption" that counsel's performance was reasonably

competent and demonstrate that "in light of all the circumstances, the identified acts or omissions

were outside the wide range of professionally competent assistance." Id. at 689-90. Even if

petitioner can establish deficient performance under this high standard, relief remains

unavailable unless he also shows a "reasonable probability" that, but for counsel's errors, the

outcome of the proceeding would have been different. Id. at 694-95. The court must deny relief

if petitioner fails to establish either of the Strickland prongs. Id. at 697.

Under these standards, even if Eaton could somehow circumvent his procedural default

so as to allow federal habeas review on the merits of his claims, he has not established grounds

for relief. Under § 2254(d), this court could only grant relief if the Circuit Court's adjudication

of his ineffective assistance claims was contrary to or an unreasonable application of Strickland

or based on an unreasonable determination of facts. The court can make no such finding.

Eaton first alleges that counsel was ineffective in failing to investigate documentary or

physical evidence to prove that the witnesses were lying. The state habeas court dismissed this

claim under Strickland, stating that Eaton's rambling petition failed to identify clearly any

particular evidence counsel should have investigated. Eaton presented documentation with his

state petition indicating that Eaton was in jail from October 1970 to March 1972, and was living

elsewhere in 1973. Eaton asserted in his state petition, as he does here, that his jail record

proved Sherry, born in January 1966, lied when she testified Eaton begun sexually assaulting her once or twice a week from the time she was five years old.

The court cannot find that counsel's failure to present this evidence constituted an unreasonable trial strategy. Extensive discussion of Eaton's prior convictions and incarceration would have further eroded his already fragile credibility. Moreover, proof that Eaton could not have abused Sherry until she turned seven does not impeach her highly detailed description of the abusive acts in 1977 and 1978 for which he was convicted. Eaton simply has not established a reasonable probability that presentation of this evidence would have resulted in a different outcome at trial. Therefore, the claim fails under both prongs of Strickland. As the state court's disposition of this claim was neither contrary to, nor an unreasonable application of federal law, or based on an unreasonable determination of facts in light of the record as a whole, the court will grant the motion to dismiss as to Eaton's first claim.

In his second claim and third claims, Eaton asserts that counsel was ineffective in failing to argue that the prosecution did not offer evidence, other than perjured and inconsistent testimony, to prove the time, location, circumstances, and elements of the offenses, particularly penetration. He asserts that the family lived in New Hope, not Mint Springs, in the summer of 1977.[3] The state court found these claims to be without merit under Strickland, and this court agrees. As the state habeas court noted, trial counsel argued extensively that the witnesses' testimony about Eaton's abusiveness was inherently incredible in light of their later relationships to him. The state court also noted specific testimony from the victims on which the Court could have found that penetration occurred at the times and in the jurisdiction as alleged in the indictments, with the exception of the van incident. Clint testified that Eaton took him for a ride in a van and stopped on a back road where the crime occurred, but did not testify that this spot

_____

[3] As the state habeas court noted, both of these towns are located in Augusta County.

12

was located within Augusta County. The state court refused to find counsel ineffective for failing to raise this point at trial, because an objection to the proof of venue would likely have resulted in a ruling that the Commonwealth could reopen its case in chief.

Eaton contends that the prosecution had no evidence to show where the van was and also asserts that he did not own the van Clint identified from a photograph in connection with this crime until later. The court cannot find that these omissions prove counsel was ineffective under Strickland, however. Neither the exact location within the county nor the exact date on which the offense conduct occurred is a necessary element of a criminal offense. See Va. Code Ann. § 19.2-220 (requiring indictment to state "county, city or town in which the accused committed the offense . . . "on or about a certain date") (emphasis added). Under Virginia law, "[p]roof of venue . . . is not regarded as material, so far as the merits of the prosecution are concerned, and so the allegation of venue is not a part of the crime." Randall v. Commonwealth, 31 S.E.2d 571, 573 (Va. 1944). If the only reasonable inference that can be drawn from the Commonwealth's evidence is that the offense conduct occurred within the jurisdiction, the proof of venue is sufficient. Id. The trial court could reasonably have inferred from Clint's testimony that the van ride did not extend past the boundaries of Augusta County and that it occurred in a vehicle similar to the one photographed. Thus, counsel's strategic decision not to raise the objections Eaton proffers was neither deficient performance nor prejudicial.

Eaton also faults counsel for failing to point out discrepancies between the witnesses' accounts of the offenses, such as whether Sherry was naked or half-naked when she ran from the house, where Clint was during the barn incident, or what type of gun Eaton had that day and how he got it. This court finds no reasonable probability that pointing out such small, tangential differences in the witnesses' memories would have resulted in a different outcome, as none of

these disputed facts is material to the elements of the crimes. Moreover, the trial court heard the testimony, including the variation of detail and, nevertheless, found the witnesses credible. For the stated reasons, the court concludes that the state court's adjudication of these claims was not contrary to, or an unreasonable application of federal law, or based on an unreasonable determination of facts in light of the record as a whole. Therefore, the court will grant the motion to dismiss as to Eaton's second and third claims under § 2254(d).

Similarly, in Eaton's fourth claim, he complains that counsel should have questioned Cyhanick about the differences in the witnesses' accounts as to where each of the children was standing or what they were doing when Cyhanick walked into the barn. The state court dismissed the claim, finding that Eaton had failed to state specific evidence supporting either of the Strickland factors. The court agrees. Chris testified that while Eaton made Sherry perform oral sex and made Chris "fondle him and have anal sex with him" and "Mom walked in and caught him doing it." Tr. 51. Cyhanick testified that she walked into the barn to see Chris "with his hand on" Eaton's penis and Sherry "off to the other side," and heard Eaton say, "It's her turn now," looking at Sherry. Tr. 61. Eaton fails to demonstrate, and the court cannot conceive of, any evidence favorable to the defense which counsel could have elicited through further questioning of Cyhanick about exactly what she saw in the barn. Pointing out to the court the minor discrepancies between Chris' account and Cyhanick's version would merely have emphasized the details with little or no effect on the strength of the evidence that Eaton committed the sexual crimes against these children as charged. Moreover, counsel's alternative tactic of questioning Cyhanick extensively about her long-term relationship with Eaton was clearly a reasonable one. For the stated reasons, the court concludes that the state court's adjudication of these claims was not contrary to, or an unreasonable application of federal law,

or based on an unreasonable determination of facts in light of the record as a whole. Therefore, the court will grant the motion to dismiss as to Eaton's fourth claim under § 2254(d).

In his fifth claim, Eaton reasserts his prior arguments that counsel did not present argument or evidence to prove the witnesses were lying. The state habeas court dismissed this claim because Eaton failed to demonstrate facts to establish either prong of Strickland. The Court also adopted the respondent's description of counsel's efforts in Eaton's defense and expressly found that counsel's representation was "vigorous and diligent." Opin. Letter 7, Case No. CL11001230-00. The record reflects that counsel argued and attempted to elicit testimony from Cyhanick and the victims to support Eaton's testimony about their loving relationship and his denials of sexual abuse, but the trial court did not find Eaton's version credible. And as the court's account here of the trial evidence indicates, the trial court had sufficient evidence on which to find Eaton guilty of the offenses. Eaton fails to point to any particular fact or argument that counsel failed to present on which he stood any reasonable probability of convincing the trial court of Eaton's innocence of any of those offenses. Thus, this court concludes that Eaton's claims fail under Strickland, and that the state court reasonably applied this established federal standard. Therefore, the court will grant the motion to dismiss as to Eaton's fifth claim under § 2254(d).

### III

For the reasons stated, the court will grant the motion to dismiss. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner.

ENTER: This ___ day of February, 2014.

_____
Senior United States District Judge